UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RODNEY MOTT,<br><br>Plaintiff(s),<br><br>v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC., et al.,<br><br>Defendant(s). | Case No. 2:16-CV-1949 JCM (EJY)<br><br>ORDER |

Presently before the court is defendants/counterclaimants Trinity Financial Services, LLC ("Trinity") and Trojan Capital Investments, LLC's ("Trojan")'s motion for summary judgment. (ECF No. 189). Plaintiff/counter-defendant Rodney Mott ("Mott") filed a response (ECF No. 204), to which Trinity and Trojan replied (ECF No. 217).

Also before the court are Mott's motions for judgment on the pleadings, partial summary judgment, and request for judicial notice. (ECF Nos. 192; 193; 194).[1] Trinity and Trojan responded to the motions (ECF Nos. 201; 202), and Mott replied (ECF No. 218).

Also before the court are Mott's motions to strike and for sanctions. (ECF Nos. 205; 206).[2] Trinity and Trojan filed a response (ECF No. 216), to which Mott replied (ECF No. 219).

**I.   Background**

The instant action arises from Trinity's and Trojan's attempts to enforce their purportedly unlawful interest in Mott's home. Although the parties agree on very little, it is undisputed that

---

[1] All three motions are identical documents filed three separate times to circumvent Local Rule 7-2(d).

[2] Both motions are identical document filed two separate times to circumvent Local Rule 7-2(d).

**James C. Mahan**
**U.S. District Judge**

Mott took out a $300,000 loan from nonparty First Franklin Bank, signed a promissory note secured by a second position deed of trust on his home, and defaulted on his payments. (ECF Nos. 25; 189 at 3). First Franklin Bank endorsed the note to First Franklin Financial Corporation. (ECF No. 189 at 3).

Mott alleges that he contacted First Franklin about the possibility of his interest rate being discriminatory and, as a result, First Franklin forgave the $300,000 debt in its entirety. (ECF Nos. 198 at 3; 195-3). Mott produced a letter from First Franklin forgiving the debt. (ECF No. 195-3). Trinity and Trojan call the veracity of the debt-forgiveness letter into question, pointing out a variety of typographical errors, inconsistencies, and authentication problems. (ECF No. 189 at 3–4). Although Mott allegedly told his employer, the National Basketball Association, that the loan had been forgiven (ECF No. 204 at 4), he has not produced any supporting documentation to prove the loan had been forgiven (ECF No. 189 at 8).

Trinity purchased Mott's note from nonparty Stelis, LLC.[3] (ECF No. 189 at 5). Trinity then sold its interest in the note to Trojan. (ECF No. 189 at 4–5). Trojan then began foreclosure efforts. (ECF No. 189 at 5–7).

Mott argues that neither Trinity nor Trojan had or have an interest in the note. Mott suggests that "Stelis had no authority to authorize any purported transfer of interest to Trinity." (ECF No. 192 at 4). Mott contends that the note was never properly negotiated to Trojan and that Trojan.[4] *Id.* at 12–15. It is undisputed that Trojan has physical possession of the note. (ECF No. 217 at 9). Mott also argues that, because neither Trinity nor Trojan is a licensed mortgage broker or mortgage banker in Nevada, neither entity could have lawfully acquired the note. (ECF No. 192 at 17–19).

Mott filed the instant action on August 16, 2016, alleging nine causes of action. (ECF No. 1). Mott later amended his complaint to include an additional seven causes of action (ECF No.

---

[3] Stelis acquired the note from Radian, although that conveyance is the subject of an affidavit of lost assignment. (ECF No. 204 at 7). The parties do not dispute that Stelis acquired the note.

[4] Mott argues that this is dispositive of Trojan's counterclaims because, by Mott's estimation, Trojan should be judicially estopped from arguing that it is a nonholder in possession of the note. (ECF No. 192 at 12–15).

25). Trojan filed a counterclaim, asserting quiet title and declaratory relief. (ECF No. 38). Mott's remaining claims are:[5]

>Count 1: Violations of the Fair Debt Collection Practices Act ("FDCPA") against Trojan;
>
>Count 3: Breach of contract against Trinity and Trojan;
>
>Count 4: Breach of the duty of good fair and fair dealing against Trinity and Trojan;
>
>Count 5: Declaratory relief against Trojan;
>
>Count 6: Unjust enrichment against Trinity and Trojan;
>
>Count 7: Civil conspiracy against Trinity;[6]
>
>Count 8: Civil conspiracy against Trinity and Trojan;
>
>Count 9: Civil conspiracy against Trojan;[7]
>
>Count 10: Fraudulent misrepresentation against Trojan;
>
>Count 11: Fraudulent misrepresentation against Trinity;
>
>Count 12: Negligent misrepresentation against Trinity;
>
>Count 13: Negligent misrepresentation against Trojan;
>
>Count 15: Slander of title against Trojan;
>
>Count 16: Violations of the Real Estate Settlement Procedures Act ("RESPA") against Trinity and Trojan.

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

---

[5] Mott and Trojan asserted claims against several other defendants, all of whom have been dismissed from this action.

[6] This claim alleges a conspiracy between Trinity and non-party PNC.

[7] This claim alleges a conspiracy between Trojan and non-party SDS.

"to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

"Courts may only take judicial notice of adjudicative facts that are not subject to reasonable dispute." *United States v. Ritchie*, 342 F.3d 903, 908-09 (9th Cir. 2003) (citing Fed. R. Evid. 201(b)). The court may take judicial notice of the contents records and reports of administrative bodies, *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953), and of public records, *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), when such contents are not in dispute. When the contents of such records are in dispute, however, the court may only take judicial notice of the fact that such records were filed. *Lee*, 250 F.3d at 689–90.

As an initial matter, the court grants Mott's request for judicial notice. (ECF No. 194). The court will consider the public filings Mott relies on to the extent that he contents of such documents are not in dispute. To the extent their contents are dispute, the court will take judicial notice that such documents were filed.

#### A. Dispositive motions

Mott's claims all hinge on a single argument: neither Trinity nor Trojan had authority to collect—let alone foreclose—on the note and deed of trust. Trojan's counterclaims seek declarations establishing that it has such authority. Because the court finds that the evidence

establishes Trojan's ownership and possession of the deed of trust, Trinity and Trojan's motion for summary judgment is granted and Mott's motions are denied as to all claims.

   *1. Ownership of the note*

      *a. "Holder" of the note*

Mott argues that Trojan cannot enforce the note because the note is unindorsed, and thus not properly negotiated to it. (ECF No. 193 at 12). Both a "holder" and "nonholder in possession" have the right to enforce a negotiable instrument. UCC § 3-301. The principle difference is that a holder has an indorsement of the note, whereas a nonholder in possession "has a specifically enforceable right to the unqualified indorsement of the transferor . . . ." UCC § 3-20.

Mott further argues that Trojan indicated to him that it was the holder of the note and made subsequent judicial admissions such that Trojan should be estopped from claiming it is a nonholder in possession. (ECF No. 193 at 14–15). But, as Mott admits, "statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court." *Id.* at 14 (quoting *American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)) (emphasis in original).

The court declines Mott's invitation to consider Madden's, Trinity and Trojan's non-attorney principal, statement that Trinity and Trojan were "holders" of the note as a judicial admission. Trojan's counterclaims clearly indicate that "Trinity had possession of and owned" and that "Trojan is currently in possession and owns" the note and deed of trust. (ECF No. 38 at 27). These allegations put Mott on notice that it had possession—whether it was a holder or nonholder in possession—of the note and a right to enforce its interest therein.

      *b. Trinity and Trojan's ability to lawfully acquire the loan*

Mott contends that, under NRS 645E.100(1), neither Trinity nor Trojan could have legally acquired the loan because they are not registered as either mortgage brokers or mortgage bankers. (ECF No. 193 at 17–19). However, Trinity and Trojan claim they are exempt from such licensing requirements pursuant to NRS 645F.500 because they do not and have not serviced more than ten residential mortgage loans in Nevada during any given calendar year, in the aggregate with any affiliates. (ECF No. 201 at 21).

Mott does not address Trinity and Trojan's exemption argument. The court finds there is no genuine issue of material dispute on this point. Mott has failed to demonstrate that either Trinity or Trojan need to be licensed in order to hold an interest in the note and deed of trust.

    *c.   Whether the underlying debt was forgiven*

"[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). To survive a motion for summary judgment, Mott "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Thus, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Here, Mott submits a single letter in support of his claim that First Franklin forgave a loan of over $300,000. (ECF No. 196-2). As Trinity and Trojan note, the letter is riddled with errors such that it is "highly questionable." (ECF No. 189 at 189 at 4, 11–12). Further, Mott "failed to disclose any evidence or witness that could authenticate the First Franklin letter." *Id.* at 12. Similarly, Mott does not—and, based on his discovery responses, cannot—provide any supporting tax documentation, reconveyance of the deed of trust, or any other documents to support such forgiveness. *Id.* at 8.

Accordingly, the court determines as a matter of law that the scintilla of evidence Mott presents to suggest that the debt was forgiven is insufficient for any jury to reasonably find in his favor.

    *d.   Whether Trinity and, subsequently, Trojan acquired the note*

Mott also raises a host of arguments disputing that Trojan properly acquired the note. (*See generally* ECF Nos. 192; 204; 218). Mott's arguments are predicated on inconsistencies regarding when the note was transferred to Trinity and then to Trojan and alleged deficiencies with the documentation transferring the note to Trojan. (ECF Nos. 192 at 19–20; 204 at 19–21).

For instance, Mott notes that it received two letters indicating that Trinity would be servicing the loan. (ECF No. 204 at 5). Dreambuilder Investments LLC ("Dreambuilder") sent the first letter on April 15, 2015. (ECF Nos. 195-4; 204 at 5). Land Home Financial Services, Inc. ("Land Home") sent the second on October 10, 2015. (ECF Nos. 195-5; 204 at 5). Mott also alleges that it received two different letters from Trinity informing him that Trojan would be servicing the loan. *Id.* at 6. The first was sent on August 12, 2015, and the second was sent on October 14, 2015. *Id.*

Similarly, Mott notes that First Franklin "paid the [n]ote to the order of Radian," but that there is no endorsement from Radian to any other entity. (ECF No. 204 at 14). Mott then contends that Trojan cannot foreclose because its attempt to repair title was fraudulent because Trinity and/or Trojan recorded an affidavit of lost assignment when, in reality, "Radian simply refused to respond to the title-repair agent [d]efendants hired." *Id.* at 7. But this argument is unavailing because Radian—and every other counter-defendant that appeared in this case—disclaimed any interest it had in the note. (ECF Nos. 45; 53; 57; 73; 80; 120; 121; 124).

Regardless of when Trinity and then Trojan acquired the note or the intervening steps to get there, Mott does not actually dispute that Trojan currently owns the note. Even if he did, he has not presented sufficient evidence to allow any jury to reasonably find in his favor. Accordingly, the inconsistencies regarding when the note was transferred to Trojan is immaterial and will not defeat summary judgment. Trojan is the current owner of the note.

*2. Ability to foreclose*

Mott argues that Trojan cannot succeed on its counterclaims because it cannot foreclose on the property pursuant to NRS 106.240. (ECF No. 192 at 21). NRS 106.240 provides as follows:

> The lien heretofore or hereafter created of any mortgage or deed of trust upon any real property, appearing of record, and not otherwise satisfied and discharged of record, shall at the expiration of 10 years after the debt secured by the mortgage or deed of trust according to the terms thereof or any recorded written extension thereof become wholly due, terminate, and it shall be conclusively presumed that the debt has been regularly satisfied and the lien discharged.

Nev. Rev. Stat. § 106.240.

As this court previously noted in *Posner v. U.S. Bank Nat'l Ass'n*, NRS 106.240 "'creates a conclusive presumption that a lien on real property is extinguished ten years after the debt becomes due,' **and it is not a statute of limitation**." *Posner v. U.S. Bank Nat'l Ass'n*, No. 219CV00472JADVCF, 2020 WL 1310467, at *3 (D. Nev. Mar. 18, 2020) (quoting *Pro-Max Corp. v. Feenstra*, 16 P.3d 1074, 1077 (Nev. 2001)) (emphasis added).

Indeed, the Nevada Supreme Court, in an unpublished disposition, the longstanding precedent in this state that a mortgagee may nonjudicially foreclose on a property even if the statute of limitations has run on an action to collect the underlying debt. *Penrose v. Quality Loan Serv. Corp.*, 132 Nev. 1016 (2016) (citing *Henry v. Confidence Gold & Silver Mining Co.*, 1 Nev. 619, 621–22 (1865)). Similarly, in the context of a different provision of the NRS, the Nevada Supreme Court explained that "[n]onjudicial foreclosure is neither a civil nor a criminal judicial proceeding. It is not commenced by filing a complaint with the court. NRS 11.190 serves only to bar judicial actions; thus, they are inapplicable to nonjudicial foreclosures." *Facklam v. HSBC Bank USA for Deutsche ALT-A Sec. Mortg. Loan Tr.*, 401 P.3d 1068, 1071 (Nev. 2017)

As an initial matter, the court finds Mott's NRS 106.240 argument unavailing because the 10-year period begins only when the debt "become[s] wholly due." Nev. Rev. Stat. § 106.240. Mott argues that he defaulted in November 2008, but he does not give any indication of when his debt became wholly due. (ECF No. 192 at 21). Mott does not suggest that the loan has been accelerated. To the contrary, Mott argues that Trojan's notice of default and election to sell—which would have accelerated the loan—is invalid.[8] *Id.* Assuming, without deciding, that Trojan's notice of default and election to sell is valid, it was filed in 2016. *Id.* Thus, the 10-year period does not bar Trojan from foreclosing.

---

[8] Mott contends that Trojan cannot foreclose on its interest in the note because it delivered an unrecorded copy of the notice of default and intent to sell to Mott. (ECF Nos. 192 at 20–21; 204 at 19–20). This argument is unavailing because, as discussed above, NRS 106.240 does not bar Trojan from foreclosing on its interest in the note and deed of trust. Thus, regardless of whether the prior notice of default is valid, Trojan may refile such notice and begin its nonjudicial foreclosure anew.

Assuming *arguendo* that the loan was accelerated the moment Mott defaulted, the court finds that the 10-year term in NRS 106.240 does not preclude a nonjudicial foreclosure, consistent with the Nevada Supreme Court's interpretation thereof.

In light of the foregoing, Trojan owns the note and has an interest in the deed of trust that it can enforce and foreclose on. Thus, summary judgment in favor of Trojan on its counterclaims is warranted, its failure to name Stelis as a party to its claims notwithstanding.

Further, neither Trinity nor Trojan violated the FDCPA by legally attempting to collect on the debt.[9] Trinity and Trojan did not conspire amongst themselves or with others to wrongfully acquire their interest because such interest is legitimate. Trinity and Trojan did not breach any contract or the implied covenant of good faith and fair dealing by trying to rightfully collect on their debt. Assessing the contractually warranted fees for Mott's nonpayment of his debt did not unjustly enrich Trinity and Trojan. Trinity and Trojan did not fraudulently or negligently misrepresent their interest in the note and deed of trust. Because of its legitimate interest in the property, Trojan did not slander title.

*3. Mott's Real Estate Settlement Procedures Act claim*

The foregoing discussion is dispositive of all Mott's claims except one: his Real Estate Settlement Procedures Act ("RESPA") claim. Mott alleges one violation of RESPA against Trinity and another against Trojan. The court will address each in turn.

*a. Against Trinity*

Mott argues that Trinity violated RESPA by failing to notify him that it was transferring servicing of the loan to Trojan within the statutory time period. (ECF No. 204 at 30–31).

Mott and Trinity agree that Trinity sent him a letter on October 14, 2015, informing him that Trojan would be servicing the loan. (ECF Nos. 204 at 31; 217 at 17). The parties also agree

---

[9] To the extent that Mott alleges technical violations of the FDCPA not foreclosed by the legitimacy of Trinity and Trojan's interest in the unforgiven note, Trinity and Trojan explain that either their conduct falls within an exception to the respective FDCPA provisions or there has been no evidence to establish such violations. (ECF No. 189 at 17–21). Mott falls back on his argument that the debt was forgiven, but he does not address Trinity and Trojan's other arguments. (ECF No. 204 at 22–25). Thus, Mott's FDCPA claims fail and summary judgment is appropriate.

**James C. Mahan**
**U.S. District Judge**

- 10 -

that Trojan represented to Mott that it was the loan servicer as of October 30, 2015. *Id.* Thus, Trinity informed Mott of the change in loan servicer within the statutory time period.

Accordingly, summary judgment in Trinity's favor is appropriate on this claim.

### *b. Against Trojan*

Mott contends that Trojan violated RESPA by failing to acknowledge receipt of Mott's demand for debt validation within five days. (ECF No. 204 at 31).

As Trojan notes, 12 U.S.C. § 2605(f)(4) allows a loan servicer to cure any violation of § 2605 by "notif[ying] the person concerned of the error and mak[ing] whatever adjustments are necessary in the appropriate account to ensure that the person will not be required to pay an amount in excess of any amount that the person otherwise would have paid." 12 U.S.C. § 2605(f)(4). Pursuant to § 2605(f)(4), Trojan was required to make such adjustments within 60 days. *Id.*

Mott and Trojan agree that, although Trojan failed to acknowledge receipt of Mott's demand for debt validation within five days, it responded to the demand on September 8, 2015. (ECF Nos. 204 at 31; 217 at 17). This response was only 45 days after Mott's demand.

Accordingly, Trojan cured its violation of RESPA. The court grants summary judgment in Trojan's favor as to this claim.

The court has addressed each of Mott's and Trojan's claims and resolved them in Trinity and Trojan's favor. Consequently, the court denies Mott's motions and grants Trinity and Trojan's motion. Judgment will be entered in favor of Trinity and Trojan on all claims.

### B. Motion to strike and for sanctions

The district court is vested with broad authority to impose sanctions "as are just," so long as the court does not abuse its discretion in doing so. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997); *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997) ("*Hwang*"); *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981). The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106. Nonetheless, the Ninth Circuit has identified five factors for the district court to consider before imposing severe sanctions, which are instructive here: "(1) the

public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Payne*, 121 F.3d at 507 (discussing dismissal and default); *Hwang*, 105 F.3d at 524.

Although information that a party fails to timely disclose as required by Rule 26 is ordinarily excluded, Rule 37 expressly carves out an exception when "the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Thus, the court will consider the *Payne* factors and the express language of Rule 37(c)(1) when determining whether sanctions are appropriate in the instant case.

Here, Mott argues that the purchase agreement with Stelis, which is attached as Trinity and Trojan's exhibit 10 in support of summary judgment, should be stricken because they failed to disclose it during discovery. (ECF No. 205 at 2). Mott further argues that such nondisclosure warrants sanctions. *Id.*

The court finds that sanctions are not appropriate in this case because Trinity and Trojan's failure to disclose the Stelis agreement was harmless. As discussed above, the court has already dispensed with Mott's claims, none of which were contingent upon which entity—Dreambuilder or Stelis—sold Trinity its interest in the note.

Further, Trinity and Trojan disclosed the Stelis agreement in the related case.[10] With access to the Stelis agreement, the only argument Mott raises is a speculative one: "Stelis never properly authorized the sale in question at the time it was purportedly made." (ECF No. 192 at 1, 3–4). To support this argument, Mott relies on a variety of "public filings elsewhere," specifically in an unrelated case, *Palmer v. Cerastes, LLC*. *Id.* at 3–4. Mott notes that "that numerous sales of Stelis assets were unlawful around the time that Trinity acquired its purported interest," but does not argue that the sale of his note was not authorized. *Id.* Instead, Mott simply makes the speculative insinuation that such sale was unauthorized and, consequently, ineffective.

Nonetheless, Mott admits that the loan was ultimately transferred to Trinity, whether that transfer was by Dreambuilder in April 2015, or Land Home in October 2015. *Id.* at 4–5. Indeed,

---

[10] *See Mott v. Trinity Financial Services, LLC et al.*, case no. 2:17-cv-01754-RFB-EJY.

by Mott's own admission, Land Home was certainly authorized to transfer the note to Trinity.[11] *Id.* at 5.

Accordingly, Mott was able to and did, in fact, raise his preferred arguments. He was not prejudiced by the failure to disclose the Stelis agreement. Consequently, the motion to strike is denied, and sanctions are not warranted.

**IV.  Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Trinity and Trojan's motion for summary judgment (ECF No. 189) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Mott's motion for judgment on the pleadings (ECF No. 192) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Mott's motion for partial summary judgment (ECF No. 193) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Mott's request for judicial notice (ECF No. 194) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Mott's motion to strike (ECF No. 205) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Mott's motion for sanctions (ECF No. 206) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Trojan shall file, within 14 days of this order, a proposed judgment consistent with the foregoing.

DATED April 3, 2020.

_____
UNITED STATES DISTRICT JUDGE

---

[11] Mott contends that Trojan's counterclaims fail because he believes Stelis is a necessary party to those claims. (ECF No. 204 at 12–13). However, because Land Home also sent a letter indicating that servicing of the loan was transferred to Trinity, this argument is unavailing. Further, the Stelis agreement proves that Stelis does not have an interest in the property. (ECF Nos. 191-10; 217 at 7)

**James C. Mahan**
**U.S. District Judge**